Below is an Opinion of the Court.

_____
TRISH M. BROWN
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re: | Bankruptcy Case No. 11-33104-tmb7 |
| KEVIN P. CLOUSER | |
| Debtor. | OPINION AND ORDER |

This matter came before the court on the Motion for Summary Judgment (the "Motion," ECF No. 51) filed on August 8, 2016, by creditor National Collegiate Student Loan Trust 2004-1 ("NCSLT"). In reaching my decision, I have carefully reviewed the Motion and the parties' memoranda relating thereto. I have also read applicable legal authorities, both as cited by the parties and as located through my own research. The following findings of fact and legal conclusions constitute my findings under Federal Rule of Civil Procedure 52(a), applicable through Federal Rules of Bankruptcy Procedure 9014(c) and 7052. To the extent any findings of fact constitute conclusions of law, they are adopted as such. To the extent that any of the conclusions of law constitute findings of fact, they are adopted as such.

**FACTUAL AND PROCEDURAL BACKGROUND**

Kevin P. Clouser ("Debtor") filed a voluntary chapter 7[1] petition on April 13, 2011, and received a discharge on July 20, 2011. ECF Nos. 1 and 23. Debtor's Schedule F lists an unsecured debt of $85,109

---

[1] Unless otherwise indicated, all chapter and section references are to title 11, U.S. Code (the "Bankruptcy Code").

Page 1 - OPINION AND ORDER

(the "Debt") held by National Collegiate Trust[2] and described as a "Student Loan." ECF No. 9. After reopening the above-captioned case, Debtor filed a motion for contempt (ECF No. 56), alleging that NCSLT has attempted to enforce Debtor's personal liability on the Debt, in violation of the discharge injunction contained in § 524(a).

The Debt arises from a loan that Debtor received from Bank of America in 2003. Decl. of Kevin Clouser (ECF No. 56) ¶ 2. Debtor obtained the loan to send his son to Mount Bachelor Academy.[3] *Id.* As part of the lending transaction, Debtor signed a "Non-Negotiable Credit Agreement" and two "Note Disclosure Statements" (collectively, the "Loan Documents"). *See* Decl. of James H. Cummins (ECF No. 52), Exh. A at 1-7. The Loan Documents specify that the loan is to be governed by federal and California law. *Id.*, Exh. A at 4.

## **LEGAL STANDARDS**

1. <u>Summary Judgment</u>

A court should grant summary judgment on a claim "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (applicable to contested matters through Fed. R. Bankr. P. 9014(c) and 7056). The movant has the burden of establishing that there is no disputed issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the facts and draw all inferences in the light most favorable to the non-moving party. *Horphag Research Ltd. v. Pellegrini*, 337 F.3d 1036, 1040 (9th Cir. 2003). The primary inquiry is whether the evidence presents a sufficient disagreement to require a trial, or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247 (1986). A party opposing a properly supported motion for summary judgment must present affirmative

---

[2] Debtor's Schedule F and his motion for contempt both refer to the creditor as "National Collegiate Trust." NCSLT alleges, and Debtor does not appear to dispute, that it is the true holder of the Debt, as assignee of the original lender Bank of America.

[3] Although Debtor alleges that his son was sixteen years old in 2003 and had not yet graduated from high school, the record does not reveal whether Debtor's son received licensed or accredited high school classes—or some other type of services—while he was at Mount Bachelor Academy.

Page 2 - OPINION AND ORDER

evidence of a disputed material fact from which a finder of fact might return a verdict in its favor. *Id.* at 257.

2. Dischargeability of Student Loans

Section 523(a)(8) defines the types of student loans that are non-dischargeable unless repayment would constitute an undue hardship. In a student loan dischargeability dispute, "the lender has the initial burden to establish the existence of the debt and that the debt is an educational loan within the statute's parameters[;] [t]he burden then shifts to the debtor, to prove [undue hardship]." *Roth v. Educ. Credit Mgt. Corp. (In re Roth)*, 490 B.R. 908, 916-917 (9th Cir. BAP 2013) (emphasis added, citations omitted). Debtor has conceded that if NCSLT carries its burden of proving that the Debt is a nondischargeable student loan, he will have to prove undue hardship through an adversary proceeding.

Three types of student loans are covered by § 523(a)(8). First are educational loans "made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution." 11 U.S.C. § 523(a)(8)(A)(i). Second are "obligation[s] to repay funds received as an educational benefit, scholarship or stipend." *Id.* § 523(a)(8)(A)(ii). The final type of nondischargeable loans are "qualified educational loans" as defined in 26 U.S.C. § 221(d)(1). *Id.* § 523(a)(8)(B). Unlike the other species of loans covered by § 523(a)(8), qualified educational loans must be incurred to pay for attendance at an institution of higher education. *See* 26 U.S.C. §§ 221(d)(2), 25A(f)(2).

**ANALYSIS**

A. What Law Applies?

The Loan Documents contain a choice-of-law provision that purports to apply both federal and California law. Cummins Decl., Exh. A at 4. Because dischargeability is purely a matter of federal bankruptcy law, I conclude that the effect of the contractual choice-of-law provision is as follows: issues concerning formation or interpretation of the parties' contract are governed by California law; whereas, any issues directly relating to dischargeability of the Debt are governed by federal law. *See Double Bogey, L.P. v. Enea*, 794 F.3d 1047, 1050 (9th Cir. 2015) (existence of fiduciary relationship for purposes of § 523(a)(4) is question of federal law); *Am. Express Travel Related Servs. Co. v. Hashemi (In re Hashemi)*, 104 F.3d

Page 3 - OPINION AND ORDER

1122, 1126 (9th Cir. 1997) ("[T]he question of the applicability of the bankruptcy laws to particular contracts is not a question of the enforceability of a contract but rather involves a unique, separate area of federal law." (*quoting Collingwood Grain, Inc. v. Coast Trading Co. (In re Coast Trading Co.)*, 744 F.2d 686, 693 (9th Cir. 1984) (internal quotation marks omitted)).

B. <u>Was the Debt Discharged</u>?

NCSLT seeks summary judgment based on its contention that the Debt is a non-dischargeable student loan. The primary argument advanced in NCSLT's Motion is that Debtor labeled the Debt as a student loan in his bankruptcy schedules, which were executed under penalty of perjury. Motion at 3. NCSLT argues that this characterization is conclusive and dispositive of the entire dispute.

It is true that Debtor's description in his schedules is consistent with the Loan Documents, which describe the transaction as an "Education Loan." Cummins Decl., Exh. A at 5. However these labels are not binding on the court. *See Wetherbee v. Willow Lane, Inc. (In re Bestway Prods.)*, 151 B.R. 530, 541 (Bankr. E.D. Cal. 1993) (bankruptcy court may take judicial notice of debtor's petition and schedules, but "[t]he fact that the documents are genuine does not mean that the court can automatically accept as true the facts contained in such documents."). Perhaps more importantly, even though Debtor's schedules do constitute an admission, this admission is not enough to carry NCSLT's evidentiary burden because the terms "student loan" and "education loan" are not coextensive with *nondischargeable loans* covered by § 523(a)(8). To cite just one hypothetical: a bank loan that is used to pay secondary school tuition, but which is neither made nor guaranteed by a nonprofit or governmental agency, would qualify in common parlance as a student loan, but would not fit under any of the three subparagraphs of § 523(a)(8).

NCSLT must do more than point to the generic label of "student loan." The creditor does not specify which subparagraph of § 523(a)(8) supposedly applies to the Debt, so I will consider each statutory provision separately.

1. <u>Is the Debt an Educational Loan Made or Guaranteed by A Nonprofit</u>?

NCSLT alleges that repayment of the Debt was guaranteed by The Education Resources Institute, Inc. ("<u>TERI</u>"), which is apparently a now-defunct non-profit loan guaranty agency. Motion at 2. But a close

Page 4 - OPINION AND ORDER

reading of the Motion reveals a tenuous basis for this claim.  The only evidence that NCSLT offers concerning the existence of a guaranty is that the Loan Documents signed by Debtor contain a statement reading "I understand that you have purchased a guaranty of this loan, and that this loan is guaranteed by [TERI]."  Cummins Decl., Exh. A at 4.  NCSLT has not shown how Debtor would be competent to testify to such a fact.  Because there is no suggestion in the record that Debtor ever had personal knowledge of the existence or terms of a third-party guaranty, the boilerplate language of the Loan Documents cannot prove the actual existence of a guaranty.  Aside from the language of the contract, NCSLT has introduced no evidence showing that the loan was made or guaranteed by a nonprofit or governmental agency—accordingly, NCSLT has not shown that the Debt is nondischargeable under § 523(a)(8)(A)(i).

2. <u>Is the Debt an Obligation to Repay An Educational Benefit</u>?

Section 523(a)(8)(A)(ii) covers obligations to repay funds received as an educational benefit, scholarship, or stipend.  Unlike other types of student loans, this statutory provision applies only to transactions where the debtor actually receives a transfer of funds.  *Institute of Imaginal Studies v. Christoff (In re Christoff)*, 527 B.R. 624, 630 (9th Cir. BAP 2015).  Here, the Loan Documents indicate that all of the loan proceeds were transferred to Mount Bachelor Academy, and Debtor received no funds.  Cummins Decl., Exh. A at 6-7.  Accordingly, the NCSLT has not proven that the Debt is nondischargeable under § 523(a)(8)(A)(ii).

3. <u>Is the Debt a Qualified Educational Loan</u>?

As noted previously, a qualified educational loan must be incurred to pay "qualified higher education expenses."  26 U.S.C. § 221(d)(1).  NCSLT has produced no evidence indicating that Debtor's son received accredited higher education courses at Mount Bachelor Academy.  Thus, NCSLT has not proven that the Debt is nondischargeable under § 523(a)(8)(B).

**CONCLUSION**

NCSLT bears the burden of proving that the Debt is within the scope of § 523(a)(8).  In seeking to prove its case, NCSLT has offered evidence that suggests the Debt was incurred for educational purposes, but has not directly addressed the important questions concerning the application of § 523(a)(8).  Debtor has

Page 5 - OPINION AND ORDER

disputed several important elements of NCSLT's case, and as the non-movant, all reasonable factual inferences must be drawn in his favor. I find that there are genuine disputes concerning material facts in this matter.

For the reasons set forth herein, the Motion is DENIED.

###

Page 6 - OPINION AND ORDER